## TRUMBLE *v.* PECK.

*(Supreme Court, General Term, Third Department. February 4, 1891.)*

FRAUD—MISREPRESENTATIONS—INTENT—EVIDENCE.

The plaintiff purchased from defendant a tax certificate for a lot described as "Lot No. 92," upon defendant's representation that the same adjoined a certain other lot described as "Lot No. 91," though in fact the two lots were 15 miles apart. In an action by the purchaser to recover the purchase money upon the ground of the vendor's fraud, it appeared that the separate location of the lots had been pointed out to defendant before the sale, but defendant testified that he did not know about the location of the lot, did not care about it, did not try to know, did not pretend to know where any lot was that he owned, and did not want to know. *Held,* that an instruction that if the statements made by defendant to the purchaser were made by him with intent to deceive, without actually knowing whether they were false or true, he was liable, was proper, and that a verdict against defendant for the purchase money should be sustained.

Appeal from circuit court, Fulton county.

Action by Mortimer Trumble against John M. Peck. Defendant appeals from a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

Lewis Cass, for appellant. N. H. *Anibal*, for respondent.

LEARNED, P. J. The verdict of the jury has decided that the defendant was guilty of a fraud in the sale of the comptroller's certificates to the plaintiff. The only question for us is whether there was such an absence of proof to substantiate the verdict that the plaintiff should have been nonsuited, or at least that the verdict should be set aside. The sale was of a tax certificate of 30 acres in lot No. 92, Chase's patent, in the town of Blecker. The plaintiff cannot read or write. The defendant had two tax certificates of different years of the same piece of land. He also had a tax certificate of lot 91, May-

field patent, or a part of it. The defendant told the plaintiff he owned land near Sprung's,—one lot, the Washburn lot; the other, the J. B. Matthews lot. Plaintiff said, if that was the John B. Matthews lot, he would take it at $3 per acre. Defendant said it was, and that it adjoined the Washburn lot, and the Washburn lot adjoined Sprung; they were all there in that vicinity. The plaintiff did not know the location of the lots. The parties were at Sprung's. One Worden was there, and defendant offered Worden the other lot, and Worden thought he would take it. The next day plaintiff told defendant he would take the Matthews lot, and Worden that he would take the Washburn lot, provided they were there. Plaintiff supposed the lot 92 was in the vicinity of Sprung's, and adjoining the other lot. In fact, lot 92 is not in the vicinity of Sprung's and does not adjoin the lot 91, Mayfield patent, but is 15 or more miles distant. The plaintiff relied on these statements of defendant that the lot was near Sprung's, and adjoined the other lot; and defendant had told him that the Washburn lot adjoined Sprung's, and that this adjoined the Washburn lot. The plaintiff's testimony to the transaction is supported by that of Sprung with Worden; and, though the defendant denies these statements, the jury have sustained the plaintiff's case.

The court properly stated to the jury that, in order that plaintiff should recover, they must find, not only that the statements were untrue, but that defendant made them with intent to defraud; and that defendant might be liable if he represented that this was the Matthews lot, not knowing whether this was true or not, if there was the intent to deceive. This, of course, is correct. It is a fraud for one, with intent to deceive, to make a statement as known to be true, material to the contract, when he does not know whether it is true or false. Now, the defendant says himself that he did not know anything about the Washburn and Matthews lots. Further, the testimony of Eugene Peck is that defendant told him he had lots 91 and 92, and that Eugene owned lot 93, in the Mayfield patent; that Eugene said if lot 92 adjoined he would buy it; that when he saw what patent it was he showed defendant that lot 92, Chase's patent, was a good many miles from 93, Mayfield patent, and he did not want it; that he got a map to show defendant how far apart the lots were,—15 or 20 miles apart; that he (defendant) was mistaken, and thought they adjoined. This was a few days before the sale to plaintiff. The defendant then testifies that Eugene Peck did get a map; and when he is asked if he then thought lot 92, Chase's patent, lay next to 91, Mayfield's patent, he answers: "I did not know to the contrary, and did not care about it, and did not try to. I do not try to know where any lot is." He does not deny that he has been at the office of the town-clerk, and will not swear that he has not looked at a map of the town. He says: "I have no anxiety to know where any land is located. I do not pretend to know where a lot is that I own. . . I do not want to." He will not deny that he did not see on the map shown him by Eugene where the lots were, and he will not say that he did not look at that map. Here we have the positive testimony of Eugene that he showed defendant that the two lots were 15 miles apart. Eugene will not testify whether he made any statement as to the correctness of the map; but this is of no consequence. The distance of the lots is proved positively by Myers, the town-clerk, from the official map. All that the defendant says is that Eugene told him that if the map was right, the lots are some ways apart, and that Eugene said: "Maybe it is a mistake." The defendant will not and does not deny that Eugene informed him the lots did not adjoin, and that he does not know whether after that he supposed they adjoined or not, and that he did not think Eugene was lying to him. Now, his own testimony convicts him. He says plainly that he did not know where his land lay. He evidently thought that there was no risk in making false statements, unless their falsehood had been previously demonstrated to him. He endeavored to keep himself ignorant, so that he could say what he pleased, and could flatter his

conscience that he did not positively know that his statements were false. That contrivance for practicing a fraud is not successful at law, however much a man may quiet his conscience thereby. But in this case the jury might have believed Eugene, whose testimony was positive, and might have disbelieved the defendant, whose statement was that Eugene said there might be a mistake. Even if there was a mistake, the defendant had been cautioned that these lots appeared to be 15 miles distant. And he could not, therefore, innocently state that they adjoined, until by further examination he had satisfied himself what was the fact. Such examination he did not make, because, as he says, he did not wish to know. The judgment and order should be affirmed, with costs.

MAYHAM, J.  I concur in result.